UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>TAYLOR WALES, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-2896 JCM (EJY)<br><br>ORDER |

Presently before the court is third-party defendant Rugged Oaks Investments, LLC's ("Rugged Oaks") motion to dismiss (ECF No. 74) defendant/counterclaimant/third-party plaintiff Taylor Wales' third-party complaint (ECF No. 57). Wales filed a response (ECF No. 77), to which Rugged Oaks replied (ECF No. 78).

Also before the court is plaintiff/counterdefendant Bank of New York Mellon's ("BNYM") motion for summary judgment (ECF No. 79) on Wales' first and second counterclaims (ECF No. 57). Wales filed a response (ECF No. 82), to which BNYM replied (ECF No. 86).

Also before the court is Wales' motion for summary judgment (ECF No. 83) on his first and second counterclaims (ECF No. 57). BNYM filed a response (ECF No. 87), to which Wales replied (ECF No. 88).

**I.  Background**

This action arises from a dispute over real property located at 5253 Saranac Road, Las Vegas, Nevada 89130 ("the property"). (ECF Nos. 1, 20).

On March 9, 2005, Susan and James Pharo (collectively "Pharos") refinanced the property with a loan in the amount of $252,000.00 from Home Loan Center, Inc. dba Lending Tree Loans ("Lending Tree"). (ECF Nos. 20, 27). Lending Tree secured the loan with a deed of trust, which

**James C. Mahan**
**U.S. District Judge**

it recorded with the Clark County recorder's office on March 17, 2005. (ECF Nos. 20, 27). Thereafter, BNYM acquired all beneficial interest in the deed of trust via an assignment, which was recorded with the Clark County recorder's office. (ECF Nos. 20, 27).

On March 23, 2012, Los Prados Community Association ("Los Prados"), through its agent Nevada Association Services ("NAS"), recorded a notice of delinquent assessment lien ("lien") against the property for the Pharos' failure to pay Los Prados in the amount of $1,677.00. (ECF Nos. 20, 27). On May 8, 2012, Los Prados recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,830.00. (ECF Nos. 20, 27).

On June 13, 2012, Bank of America, N.A. ("Bank of America"), as then-servicer of the loan, requested a ledger from Los Prados identifying the superpriority amount owed to it. (ECF Nos. 20, 63, 79-7). Bank of America received no response. (ECF Nos. 20, 63, 79-7). Bank of America then used an account statement for another property within Los Prados to calculate the superpriority amount. (ECF No. 79-7). On June 29, 2012, Bank of America submitted payment to Los Prados, through NAS, in the amount of $1,361.25. (ECF Nos. 20, 63, 79-7). NAS rejected the payment. (ECF Nos. 20, 63, 79-7).

On October 11, 2012, Los Prados recorded a notice of foreclosure sale against the property. (ECF Nos. 20, 27). On November 9, 2012, Los Prados sold the property in a nonjudicial foreclosure sale to Rugged Oaks in exchange for $14,800.00. (ECF Nos. 20, 27). On November 15, 2012, Los Prados recorded the deed of foreclosure. (ECF Nos. 20, 27). Wales purchased the property from Rugged Oaks on or about August 13, 2014. (ECF Nos. 20, 57).

On November 17, 2017, BNYM initiated this action against defendants Wales, First California Mortgage Company, Los Prados, and Federal National Mortgage Association (collectively "defendants"). (ECF No. 1). In its amended complaint, BNYM alleged four causes of action: (1) declaratory judgment that the foreclosure sale was void; (2) declaratory judgment that BNYM may sell the property in a judicial foreclosure sale; (3) judicial foreclosure; and (4) injunctive relief. (ECF No. 20).

On April 24, 2018, the defendants moved to dismiss BNYM's amended complaint. (ECF No. 27). On August 30, 2018, Wales filed a third-party complaint against Rugged Oaks alleging

three causes of action for breach of contract and requesting specific performance. (ECF No. 57). Wales also filed two counterclaims against BNYM for declaratory judgment and quiet title. *Id*. On November 1, 2018, the court granted defendants' motion to dismiss and dismissed the amended complaint, finding that the statute of limitations barred BNYM's claims. (ECF No. 66).

Now, Rugged Oaks moves to dismiss Wales' third-party complaint as moot (ECF No. 74), BNYM moves for summary judgment on Wales' first and second counterclaims (ECF No. 79), and Wales moves for summary judgment on his first and second counterclaims (ECF No. 83).

**II. Legal Standard**

*a. Motion to dismiss*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. When a defendant brings a Rule 12(b)(1) motion, the plaintiff has the burden of establishing subject matter jurisdiction. *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007) ("Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.").

"Mootness is a jurisdictional issue, and 'federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists.'" *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (quoting *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999)). "If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). Because mootness "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under [Rule] 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

*b. Motion for summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

"to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. Where the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

Pending before the court is Rugged Oaks' motion to dismiss and BNYM and Wales' cross motions for summary judgment. (ECF Nos. 74, 79, 83). The court will address each in turn.

*a. BNYM and Wales' cross motions for summary judgment*

BNYM and Wales have filed cross motions for summary judgment on Wales' first and second counterclaims for declaratory judgment and quiet title. (ECF Nos. 79, 83). The motions raise two chief issues: (1) whether the foreclosure sale extinguished BNYM's deed of trust; and (2) whether the court's dismissal of BNYM's amended complaint as time-barred entitles Wales to summary judgment quieting title in his favor.

BNYM argues that the foreclosure sale did not extinguish the deed of trust because Bank of America, as then-servicer of the loan, tendered the superpriority portion of the lien to NAS, Los Prados' agent. (ECF No. 79). In light of the Nevada Supreme Court's holding in *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev. 2018) ("*SFR III*"), the court agrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other

HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016) ("NRS 116.3116(2) . . . is limited to an amount equal to the common expenses assessments due *during the nine months before foreclosure.*") (emphasis added).

In *SFR III*, the Nevada Supreme Court held that a foreclosure sale did not extinguish a first deed of trust when Bank of America, the holder of the deed of trust, used the HOA's representations to calculate and tender the sum of nine months of delinquent assessments. *SFR III*, 427 P.3d at 121. Although the superpriority portion of an HOA lien typically includes maintenance and nuisance abatement charges, the court held that "Bank of America tendered the correct amount to satisfy the superpriority portion of the lien . . . [because] the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." *Id*. at 118.

The Nevada Supreme Court's holding in *SFR III* controls the court's analysis in this case. Like *SFR III*, where Bank of America relied on the HOA's representations to calculate nine months of assessments, Bank of America here relied on an account statement of another property within Los Prados to calculate nine months of assessments. *See id*.; (ECF No. 79). Further, Wales does not dispute that: (1) NAS failed to respond to Bank of America's letter requesting a ledger identifying the superpriority amount; (2) NAS did not indicate that the property had any charges for maintenance or nuisance abatement; and (3) Bank of America sent a check for nine months of common assessments to NAS. *See SFR III*, 427 P.3d at 118; (ECF Nos. 79, 82). Thus, when Bank of America sent the check to NAS, it properly tendered the superpriority portion of the lien.

Therefore, the nonjudicial foreclosure sale did not extinguish the deed of trust. *See SFR III*, 427 P.3d at 121 ("It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale . . . cannot extinguish the first deed of trust"); *see also Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, No. 17-15796, 2019 WL 1461317 at *2–3 (9th Cir. April 3, 2019).

Wales argues that BNYM lost the right to protect its interest in the property by bringing this action more than five years after the date of the foreclosure sale. (ECF No. 82). The Nevada Supreme Court addressed this contention in *SFR III*: "[g]enerally, the creation and release of a lien

cause priority changes in a property's interests as a result of a written legal document. But Bank of America's tender cured the default and prevented foreclosure as to the superpriority portion of the HOA's lien by operation of law." *See* 427 P.3d at 120. As in *SFR III*, Bank of America's tender here cured the default, such that BNYM's deed of trust survived the foreclosure sale by operation of law. That BNYM's amended complaint was dismissed as time-barred is of no moment because nothing in NRS Chapter 116 or otherwise requires judicial action to perfect the right to foreclose through a nonjudicial foreclosure sale. *See Facklam v. HSBC Bank USA for Deutsche ALT-A Sec. Mortg. Loan Tr.*, 401 P.3d 1068, 1071 (Nev. 2017) ("[A] lender may recover on a deed of trust even after the statute of limitations for contractual remedies on the note has passed. Nonjudicial foreclosure is neither a civil nor a criminal judicial proceeding. It is not commenced by filing a complaint with the court. NRS 11.190 serves only to bar judicial actions; thus, [it is] inapplicable to nonjudicial foreclosures.").

Wales also argues that he "paid full, fair market value, i.e. valuable consideration, for the Property" and that he "acquired the Property without knowledge of [BNYM's] competing claims," such that his interest is unencumbered by BNYM's deed of trust. (ECF No. 88). "A party's status as a BFP [*bone fide* purchaser] is irrelevant when a defect in the foreclosure proceeding renders the sale void." *SFR III*, 427 P.3d at 121. "[A]fter a valid tender of the superpriority portion of an HOA lien, a foreclosure sale on the entire lien is void as to the superpriority portion, because it cannot extinguish the first deed of trust on the property." *Id*. Because BNYM validly tendered the superpriority portion of Los Prados' lien, the foreclosure sale was void as to the superpriority portion. BNYM's deed of trust thus remains on the property and Wales' status as a BFP is not to the contrary.

In summary, the court finds that BNYM's deed of trust was not extinguished by Los Prados' nonjudicial foreclosure sale and therefore continues to encumber the property.

*b. Rugged Oaks' motion to dismiss*

Wales' third-party complaint against Rugged Oaks alleges three causes of action for breach of contract. (ECF No. 57). Rugged Oaks contends that Wales' third-party complaint should be dismissed as moot because BNYM did not succeed in its complaint against Wales. (ECF No. 74);

James C. Mahan
U.S. District Judge

- 7 -

(*see* ECF No. 66 (dismissing BNYM's amended complaint)). Rugged Oaks further contends that each cause of action, by its own terms, is predicated upon judgment being entered in the bank's favor. (ECF No. 74). Wales responds that he continues to have a legally cognizable interest in the outcome of this litigation because BNYM has already expressed its intention to appeal the court's order dismissing BNYM's amended complaint and because title has not yet been quieted in his favor. (ECF No. 77).

For the reasons set forth in section III.a above, BNYM's deed of trust continues to encumber the property. There thus remains a live controversy between Rugged Oaks and Wales with regard to Wales' causes of action for breach of the purchase agreement, breach of the grant, bargain, and sale deed, and for specific performance is relation therewith. Wales may therefore proceed on his third-party complaint against Rugged Oaks.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Rugged Oaks' motion to dismiss (ECF No. 74) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 79) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Wales' motion for summary judgment (ECF No. 83) be, and the same hereby is, DENIED.

DATED January 7, 2020.

_____
UNITED STATES DISTRICT JUDGE